**THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| **JENNA BARRINGTON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FM SALT LAKE CARE PROPERTIES LLC d/b/a ESCALANTE AT COVENTRY; FRONTIER MANAGEMENT, LLC and/or FRONTIER SENIOR LIVING, LLC,**<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:26-cv-00028-DBB-JCB**<br><br>**District Judge David Barlow**<br><br>**Magistrate Judge Jared C. Bennett** |

## INTRODUCTION[1]

Pro se Plaintiff Jenna Barrington ("Ms. Barrington") filed this lawsuit against Defendants FM Salt Lake Care Properties LLC dba Escalante at Coventry and Frontier Management, LLC and/or Frontier Senior Living, LLC (collectively, "Defendants").[2] At the same time, Ms. Barrington moved to proceed in forma pauperis under 28 U.S.C. § 1915 ("IFP Statute").[3] The court temporarily granted that motion.[4] Accordingly, the court reviews the sufficiency of Ms. Barrington's complaint under the authority of the IFP Statute. As demonstrated in the analysis set

[1] This case is referred to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(B). ECF No. 6.

[2] ECF No. 1.

[3] ECF No. 2.

[4] ECF No. 5.

forth below, Ms. Barrington's complaint fails to state claims upon which relief can be granted. However, rather than recommending dismissal of this case on that basis, the court provides Ms. Barrington with an opportunity to amend her complaint

## BACKGROUND

The following background is based upon the allegations contained in Ms. Barrington's complaint. Ms. Barrington is a registered nurse with six years of professional nursing experience and began her employment with Defendants as a hospice and home-health nurse in October 2021.[5] Ms. Barrington became "a full-time salaried Health Services Director (Director of Nursing)" in November 2024 and reported to Executive Director Mickey Hale ("Mr. Hale").[6]

Ms. Barrington claims that in November 2024, she "was subjected to sexual harassment, intimidation, and a hostile work environment created by" Mr. Hale.[7] Ms. Barrington alleges that "Mr. Hale's conduct included hostility toward [her] and toward staff under [her] supervision, creating an abusive and intimidating workplace."[8] Ms. Barrington contends that "[t]he harassment was severe and pervasive and altered the terms and conditions of [her] employment."[9]

On February 14, 2025, Ms. Barrington "engaged in protected activity by reporting [Mr. Hale's] sexual harassment and hostile conduct" to Defendants' human resources department.[10]

---

[5] ECF No. 1 at 2.

[6] *Id.* (citation modified).

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

Ms. Barrington asserts that she "reasonably believed she was reporting unlawful discrimination prohibited by Title VII" of the Civil Rights Act of 1964.[11]

On February 21, 2025, Defendants suspended Ms. Barrington "without pay, and without any meaningful investigation, warning, or prior discussion."[12] At the time of her suspension, Ms. Barrington "had received positive feedback, had no disciplinary history, no verbal warnings or written reprimands, and was fulfilling her job duties satisfactorily."[13] Due to her suspension, Ms. Barrington "was prohibited from entering [Defendants'] facility, communicating with staff, or performing her job duties."[14] During Ms. Barrington's suspension, Defendants' human resources department "ignored [her] attempts to communicate by email, phone, and text."[15] Ms. Barrington claims that she "received no response, interview, or opportunity to provide information regarding the allegations or suspension."[16] Approximately one week after Ms. Barrington's suspension was imposed, "Defendants abruptly terminated [her] employment under a pretextual claim of 'conflict of interest.'"[17] Ms. Barrington alleges that Defendants then "banned [her] from [Defendants'] facility and threatened current employees and former colleagues with termination if they communicated or were seen with [her]."[18]

---

[11] *Id*. at 2-3.

[12] *Id*. at 3.

[13] *Id*.

[14] *Id*.

[15] *Id*.

[16] *Id*.

[17] *Id*.

[18] *Id*.

Ms. Barrington claims that she "suffered loss of income, including at least three months of unemployment and a subsequent reduction in annual earnings of approximately $13,000."[19] Ms. Barrington also "lost a $92,000 job opportunity, as well as professional relationships and community connections, as a result of reputational harm."[20] Ms. Barrington asserts that her "career trajectory and professional reputation in the nursing community were severely damaged," which required "a significant change in nursing specialty and occupation."[21] Ms. Barrington alleges that she "experienced significant emotional distress, including anxiety, depression, insomnia, panic attacks, and physical health decline."[22] Ms. Barrington "ultimately filed for bankruptcy as a direct result of the sudden loss of income and employment."[23]

Ms. Barrington contends that she filed a charge of discrimination with the Antidiscrimination and Labor Division of the Utah Labor Commission and the Equal Employment Opportunity Commission ("EEOC").[24] Ms. Barrington claims that she received a Notice of Right to Sue from the EEOC and timely filed this lawsuit against Defendants.[25] Ms. Barrington asserts claims against Defendants under Title VII for sexual discrimination based upon a hostile work environment and retaliation.[26] Ms. Barrington maintains that she has

---

[19] *Id.* (citation modified).

[20] *Id.* (citation modified).

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.* at 1.

[25] *Id.*

[26] *Id.* at 4.

suffered damages in the form of: (1) back pay and lost wages; (2) front pay and loss of future earning capacity; (3) "[e]motional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life"; (4) damage to her professional reputation; and (5) out-of-pocket expenses.[27] In her request for relief, Ms. Barrington seeks compensatory damages of "[a]t least $200,000 or more for income, wage, career, and reputational damages," "$100,000-$200,000 or more for emotional distress damages," and punitive damages.[28]

## LEGAL STANDARDS

Whenever the court authorizes a plaintiff to proceed without payment of fees under the IFP Statute, the court is required to "dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted."[29] In determining whether a complaint fails to state a claim under the IFP Statute, the court employs the same standard used for analyzing motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[30] Under that standard, the court "accept[s] as true the well[-]pleaded factual allegations and then determine[s] if the plaintiff has provided 'enough facts to state a claim to relief that is plausible on its face.'"[31] In addition to accepting a plaintiff's well-pleaded facts as true, the court "view[s] them in the light most favorable to [the plaintiff] . . . and draw[s] all reasonable

---

[27] *Id.*

[28] *Id.* at 5 (citation modified).

[29] 28 U.S.C. § 1915(e)(2)(B)(ii).

[30] *Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007).

[31] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

inferences from the facts in favor of [the plaintiff].”[32] “Rather than adjudging whether a claim is ‘improbable,’ ‘factual allegations in a complaint must be enough to raise a right to relief above the speculative level.’”[33] “[I]n examining a complaint under Rule 12(b)(6), [the court] disregard[s] conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest the defendant is liable.”[34]

Additionally, Fed. R. Civ. P. 8 is incorporated into the court’s Rule 12(b)(6) analysis.[35] Rule 8(a)(2) requires that a complaint contain “a short and plain statement of the claim showing that the pleader is entitled to relief.” “A pleading that offers ‘labels and conclusions’ or ‘a formulaic recitation of the elements of a cause of action will not do.’ Nor does a complaint suffice if it tenders ‘naked assertions’ devoid of ‘further factual enhancement.’”[36] “Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.”[37] Rule 8 requires, at least, that the allegations of a complaint put the defendant fairly on notice of the basis for the claims against it.[38] Indeed, the twin purposes of a complaint are to give

[32] *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

[33] *Kay*, 500 F.3d at 1218 (quoting *Twombly*, 550 U.S. at 555-56) (citation modified).

[34] *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

[35] *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010).

[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557) (citation modified).

[37] *Id.*

[38] *Twombly*, 550 U.S. at 555.

the opposing party that notice so that it may respond and to allow the court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief.[39] To comply with Rule 8,

> a complaint must explain what each defendant did to [the plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and . . . what specific legal right the plaintiff believes the defendant violated. . . . [T]hese are, very basically put, the elements that enable the legal system to get weaving—permitting the defendant sufficient notice to begin preparing its defense and the court sufficient clarity to adjudicate the merits.[40]

Before dismissing a pro se plaintiff's complaint under the IFP Statute for failure to state a claim, the court must determine whether to give the plaintiff leave to amend the complaint to cure any pleading deficiencies.[41] Indeed, "'[d]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts [she] has alleged[,] and it would be futile to give [her] an opportunity to amend.'"[42]

In analyzing Ms. Barrington's complaint, the court is mindful that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[43] However, it is not "the proper function of the district court to assume the

---

[39] *Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989).

[40] *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007); *see also United States ex rel. Brooks v. Stevens-Henager Coll.*, 305 F. Supp. 3d 1279, 1307 (D. Utah 2018).

[41] *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) (providing that before dismissing a pro se plaintiff's complaint for failure to state a claim, "the district court should allow a [pro se] plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim").

[42] *Kay*, 500 F.3d at 1217 (quoting *Curley*, 246 F.3d at 1281).

[43] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

role of advocate for the pro se litigant,"[44] and the court "will not supply additional facts, nor will [it] construct a legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded."[45] Indeed, as the United States Court of Appeals for the Tenth Circuit stated:

> The broad reading of [a pro se] plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . . [C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding [her] alleged injury, and [she] must provide such facts if the court is to determine whether [she] makes out a claim on which relief can be granted. Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not [her] conclusory allegations.[46]

## ANALYSIS

As demonstrated below: (I) Ms. Barrington's complaint fails to state claims upon which relief can be granted; and (II) rather than dismissing this case on that basis, the court provides Ms. Barrington with an opportunity to amend her complaint. Each issue is addressed in turn.

### I. Ms. Barrington's Complaint Fails to State Claims Upon Which Relief Can Be Granted.

Ms. Barrington's complaint fails to state claims upon which relief can be granted because it does not comply with the minimum pleading standards under Rule 8. Specifically, Ms. Barrington fails to include sufficient factual allegations to state claims for: (A) hostile work environment or (B) retaliation. The court discusses each claim in order below.

---

[44] *Id.*

[45] *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam).

[46] *Hall*, 935 F.2d at 1110 (citation modified).

A. Hostile Work Environment

Ms. Barrington fails to state a claim for hostile work environment.[47] "Title VII makes it unlawful 'to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'"[48] "Title VII's prohibition of employment discrimination based on sex encompasses hostile work environment sexual harassment."[49] A plaintiff

> may make out a claim of sex discrimination based on a hostile work environment if she can show (1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment.[50]

---

[47] Unlike Ms. Barrington's Title VII claim for retaliation discussed below, her Title VII claim for hostile work environment does not implicate the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McQueen v. Northrop Grumman Sys. Corp.*, No. CV 19-2743-KHV, 2021 WL 3164855, at *7 n.16 (D. Kan. July 27, 2021) (collecting cases); *see also Jackson v. Kansas City Kansas Pub. Schs. Unified Sch. Dist. No. 500*, 799 F. App'x 586, 590-92 (10th Cir. 2020) (applying the *McDonnell Douglas Corp.* burden-shifting framework to a Title VII retaliation claim but not to a Title VII hostile work environment claim); *Ballage v. Hope & Home*, No. 21-CV-01320-PAB-KMT, 2022 WL 3716519, at *3 n.1 (D. Colo. Aug. 29, 2022) (providing that the *McDonnell Douglas Corp.* burden-shifting "framework does not apply to Title VII hostile work environment claims" (citing *Jackson*, 799 F. App'x at 590-92; *McQueen*, 2021 WL 3164855, at *7 n.16)), *report and recommendation adopted*, No. 21-CV-01320-PAB-MDB, 2022 WL 4290471 (D. Colo. Sept. 16, 2022).

[48] *Khalik*, 671 F.3d at 1192 (quoting 42 U.S.C. § 2000e-2(a)(1)).

[49] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).

[50] *Morris v. City of Colorado Springs*, 666 F.3d 654, 663 (10th Cir. 2012) (citation modified).

With respect to the first element, "[g]eneral harassment if not . . . sexual is not actionable."[51] "[I]f the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment."[52]

As for the second element, "[p]roof of either severity or pervasiveness can serve as an independent ground to sustain a hostile work environment claim."[53] "[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."[54]

> Thus, [the court] must assess the objective severity of the harassment from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. In other words, [the court] must look to a totality of the circumstances . . . and consider such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.[55]

"Title VII does not establish a general civility code for the workplace. Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American

---

[51] *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994); *see also Marks v. Sessions*, No. 16-CV-02106-WYD-MEH, 2017 WL 4278498, at *4 (D. Colo. Sept. 27, 2017) ("[G]eneral harassment is not actionable[;] the harassment must be based on . . . sex." (citing *Bolden*, 43 F.3d at 551)).

[52] *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1263 (10th Cir. 2005) (citation modified).

[53] *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021).

[54] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *see also Morris*, 666 F.3d at 664 ("A plaintiff must show that the environment was both objectively and subjectively hostile or abusive." (citation modified)).

[55] *Morris*, 666 F.3d at 664 (citation modified); *see also Faragher*, 524 U.S. at 787-88 ("We directed courts to determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." (citation modified)).

workplaces is not the stuff of a Title VII hostile work environment claim."[56] "A recurring point" in United States Supreme Court Title VII hostile work environment opinions "is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[57] "An employer creates a hostile work environment when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[58] The United States Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."[59]

Ms. Barrington fails to allege sufficient facts to support her claim for hostile work environment. Her only factual allegations concerning a hostile work environment are: (1) in November 2024, she "was subjected to sexual harassment, intimidation, and a hostile work environment created by" Mr. Hale; (2) "Mr. Hale's conduct included hostility toward [her] and toward staff under [her] supervision, creating an abusive and intimidating workplace"; and (3) "[t]he harassment was severe and pervasive and altered the terms and conditions of [her] employment."[60] Those conclusory factual allegations fail to satisfy the minimum pleading standards of Rule 8 because the allegations are nothing more than "'a formulaic recitation'" and a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory

---

[56] *Morris*, 666 F.3d at 663-64 (citation modified).

[57] *Faragher*, 524 U.S. at 788 (citation modified).

[58] *Morris*, 666 F.3d at 664 (citation modified).

[59] *Faragher*, 524 U.S. at 788.

[60] ECF No. 1 at 2.

statements."[61] Because Ms. Barrington has not supported her hostile work environment claim with adequate factual allegations, that claim fails.

B. Retaliation

Ms. Barrington fails to state a claim for retaliation. "Title VII . . . makes it unlawful for an employer to retaliate against an employee 'because [s]he has opposed any practice made an unlawful employment practice by [Title VII].'"[62] A plaintiff can establish Title VII retaliation "directly [by] showing that retaliation played a motivating part in the employment decision, or indirectly by relying on the . . . *McDonnell Douglas* framework."[63] Because Ms. Barrington does not rely upon direct evidence of retaliation, the court applies the *McDonnell Douglas* framework to her retaliation claim.

To establish a prima facie case for Title VII retaliation under that framework, "a plaintiff must show (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[64] "While the [Rule] 12(b)(6) standard does not require that [the] [p]laintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether [the] [p]laintiff has set forth a plausible claim."[65] Therefore, to determine whether a plaintiff's

---

[61] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[62] *Khalik*, 671 F.3d at 1192 (quoting 42 U.S.C. § 2000e-3(a)) (second alteration in original).

[63] *Id.*

[64] *Id.* at 1193 (citation modified).

[65] *Id.* at 1192.

complaint states a claim upon which relief can be granted, the court examines "the elements a plaintiff must prove to establish a claim for . . . retaliation under Title VII."[66]

Ms. Barrington fails to plead sufficient facts to satisfy the first element. "To engage in protected opposition to discrimination, the plaintiff must have 'a reasonable, good-faith belief that the underlying conduct that [she] opposed violated Title VII.'"[67] A reasonable, good-faith belief requires both a subjective belief and an objectively reasonable belief.[68] "[A] retaliation claim need not be based on opposition to an actual violation of Title VII."[69] However, the court "must evaluate the objective reasonableness of [a plaintiff]'s belief that [her] employer has engaged in an unlawful employment practice against existing substantive law."[70]

Ms. Barrington's only factual allegations concerning protected opposition to discrimination are: (1) on February 14, 2025, she "engaged in protected activity by reporting [Mr. Hale's] sexual harassment and hostile conduct" to Defendants' human resources department; and (2) she "reasonably believed she was reporting unlawful discrimination prohibited by Title VII."[71] Those scant factual allegations fail to satisfy the minimum pleading

---

[66] *Id.*

[67] *Holdaway v. Provo River Water Users Ass'n*, No. 2:19-CV-00467-JCB, 2020 WL 3037236, at *3 (D. Utah June 4, 2020) (quoting *Oliver v. Peter Kiewit & Sons/Guernsey Stone*, 106 F. App'x 672, 675 (10th Cir. 2004)).

[68] *Id.*

[69] *Id.* (citing *Crumpacker v. Kansas Dep't of Hum. Res.*, 338 F.3d 1163, 1171 n.5 (10th Cir. 2003)); *see also Zimpfer v. Aramark Mgmt. Servs., LP*, 795 F. Supp. 2d 1249, 1253 (D. Utah 2011) (same).

[70] *Holdaway*, 2020 WL 3037236, at *3 (citation modified); *see also Zimpfer*, 795 F. Supp. 2d at 1253 (same).

[71] ECF No. 1 at 2-3.

standards of Rule 8 because, again, they are "'a formulaic recitation'" and a "[t]hreadbare recital[] of the element[] of a cause of action, supported by mere conclusory statements."[72] Further, "general assertions of . . . retaliation, without any details whatsoever of events leading up to [the plaintiff's] termination, are insufficient to survive a motion to dismiss. While 'specific facts are not necessary,' some facts are."[73] Because Ms. Barrington's conclusory factual allegations are inadequate to satisfy the first element of her retaliation claim, that claim fails.

## II. The Court Provides Ms. Barrington With an Opportunity to Amend Her Complaint.

Although Ms. Barrington's complaint fails to state claims upon which relief can be granted, the court again acknowledges that "'[d]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts [she] has alleged[,] and it would be futile to give [her] an opportunity to amend.'"[74] Because Ms. Barrington might be able to cure the above-referenced deficiencies in her complaint and save her claims from dismissal, the court provides her with the opportunity to amend her complaint. Ms. Barrington may file an amended complaint on or before November 20, 2026. Ms. Barrington's failure to file an amended complaint by that deadline will result in the court recommending dismissal of this case for the reasons outlined above.

---

[72] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[73] *Khalik*, 671 F.3d at 1193 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (citation modified).

[74] *Kay*, 500 F.3d at 1217 (quoting *Curley*, 246 F.3d at 1281).

## ORDER

For the reasons stated above, the court HEREBY ORDERS:

1. Ms. Barrington's motion to proceed in forma pauperis[75] is TEMPORARILY GRANTED.
2. On or before November 20, 2026, Ms. Barrington may file an amended complaint.
3. Ms. Barrington's failure to file an amended complaint by that deadline will result in the court recommending dismissal of this case for the reasons outlined above.
4. If Ms. Barrington files an amended complaint, the court will review the sufficiency of the amended complaint under the IFP Statute.
5. Although Ms. Barrington is permitted to file an amended complaint, the restriction on filing motions or other documents set forth in the court's prior order[76] remains in place.

IT IS SO ORDERED.

DATED this 30th day of October 2026.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

[75] ECF No. 2.

[76] ECF No. 5.